**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DMITRY KRUGLOV,

                              Plaintiff,

    - v -                                           Civ. No. 1:17-CV-1306
                                                          (DNH/DJS)

COPART OF CONNECTICUT, INC., *et al.*,

                              Defendants.
_____

**APPEARANCES:**                                  **OF COUNSEL:**

DMITRY KRUGLOV
Plaintiff, *Pro Se*
22 Tricor Ave.
New Paltz, New York 12561

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

      The Clerk has sent for review a civil Complaint filed by *pro se* Plaintiff Dmitry Kruglov. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *In Forma Pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, dated January 16, 2018, this Court granted Plaintiff's Application to Proceed IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

# I. DISCUSSION

## A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the

factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. at 678 (further citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Allegations Contained in Plaintiff's Complaint

According to the allegations contained in the Complaint, which for the purpose of this Report-Recommendation and Order are accepted as true, Plaintiff was in a dire financial situation, having been unemployed on a long-term basis, and was in search of an affordable vehicle. Dkt. No. 1, Compl. at ¶ 6. Towards that end, he visited the website of Defendant Copart of Connecticut, Inc ("Copart"), a company that sells used and/or salvaged vehicles through a online bidding process, and traveled to Copart's facility in the Town of Marlboro,

Ulster County New York, to view cars to bid upon.  *Id.* at ¶¶ 2, 8 & 9.  He inspected 40 vehicles, limiting his search to only donated ("consignment') vehicles.  *Id.* at ¶ 9.  In early October 2013, utilizing the services of a broker, Defendant USA Auto Market, LLC,[1] Plaintiff bid for and purchased one of the vehicles that he had inspected - a green Mazda Tribute DX for $1,554.  *Id.* at ¶¶ 13, 17; Dkt. No. 1-1, Exhs. to Pl.'s Compl., at pp. 10 & 26.[2]  The vehicle was purchased "'as is where is' with no warranties. Sale is final."  *Id.* at p. 31.

When Plaintiff went to pick up the vehicle, he discovered that the drive gear was damaged and that the car did not move in a forward direction.  Compl. at ¶ 18.  He therefore sought to cancel the contract and to obtain the return of his money from Copart, but that request was refused.[3]  *Id.* at ¶¶ 19-20, 23-24.  Plaintiff also made his refund request to USA Auto Market, LLC, which passed that request onto Copart, which again refused and advised that the Plaintiff could either take possession of the vehicle or could resell it through Copart.  *Id.* at ¶¶ 21-22.

With his efforts to reject the car and to obtain a refund of the money paid having

---

[1] Plaintiff alleges that he was advised by Copart that under New York law, private individuals could not bid on such "salvage" title vehicles, and therefore he was required to hire USA AutoMarket, LLC, which charged him a fee of $150.  Compl. at ¶ 12; Exhs. to Pl's Compl. at p. 27.  Plaintiff further alleges that this representation was false and fraudulent.  *Id*. at ¶¶ 12 & 84.

[2] Citations to Plaintiff's Complaint and to Plaintiff's Exhibits are to the pagination assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

[3] As one basis for the refund request, and despite the fact that the vehicle was sold "as is," Plaintiff points to Copart's Protection Pledge which contains the language "11. Any damage that could have been discovered upon a reasonable inspection if you paid for and picked up the vehicle in person."  Compl. at ¶ 20; Exhs. to Pl's Compl. at p. 35  The Court notes that the above quoted language follows the initial precatory sentence: "**The following are some examples of situations that are NOT protected by member protection pledge**:"  *Id.* at p. 35 (emphasis in original).

failed, and facing a fee for storage, Plaintiff then agreed to resell the vehicle through Copart. *Id.* at ¶ 28. Plaintiff and Copart entered into a consignment agreement on October 17, 2013. *Id.*; Exhs. to Pl's Compl. at p. 43. Plaintiff then encountered significant difficulties with attempting to resell the vehicle as a result of Defendant Copart's loss of the title to the vehicle; a dispute regarding selling and/or listing fees to be paid to Copart; and issues regarding email correspondence and account setup. Compl. at ¶¶ 29-58.

Realizing that the car was not going to be sold to a third-party, Plaintiff then sought and received a quote of $350 for Copart to purchase the car directly. *Id.* at ¶¶ 59-61. On July 3, 2014, Plaintiff agreed to this price, and signed and sent the title of the vehicle to Copart's yard manager. *Id.* at ¶ 62. However, Copart never paid the Plaintiff the price of $350, but did keep the vehicle and reregistered the title. *Id.* at ¶¶ 63-64.

Plaintiff commenced this action on November 27, 2017 and his *pro se* complaint contains thirteen separate causes of action.[4] *See generally*, Compl. The heart of the Complaint is contained in the eleventh and twelfth causes of action, which allege claims for the breach of three separate contracts: the original vehicle purchase agreement of October 2, 2013; the consignment agreement of October 17, 2013; and the verbal repurchase agreement of July 3, 2014. *Id.* at ¶¶ 113, 114. The remaining claims generally derive from the facts that are central to those breach of contract claims. For example, in the Third, Fourth Fifth and Sixth causes of action, Plaintiff alleges that Defendant Copart's employees acted

---

[4] The Complaint omits a specific designation for the eleventh cause of action, which the Court assumes is contained at paragraph 113 of the Complaint.

in bad faith and committed fraud when they advised Plaintiff that the car purchase agreement could not be canceled. *Id.* at ¶¶ 86-99. In the Eighth, Ninth, and Tenth causes of action, Plaintiff alleges fraud and conspiracy as a result of Defendant Copart inducing him to sign up for a new resale agreement with higher-than-expected fees and costs, *id*. at ¶¶ 101 & 102, and then charging him fees for listing that was set up under the wrong account. *Id.* at ¶ 111.

As separate claims, Plaintiff alleges that Defendant Copart's advertisement of vehicles violated New York State law and fraudulently indicated that the cars were available to public buyers, but when Plaintiff attempted to bid for them, he was told that he had to hire a broker at an additional cost of $150. *Id.* at ¶¶ 82, 84. Finally, Plaintiff makes claims for negligent infliction of emotional distress and tortious interference. *Id.* at ¶¶ 100, 115.

### C. Federal Jurisdiction over Plaintiff's Complaint

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of his *pro se* status, the Court will *sua sponte* assess whether subject matter jurisdiction is present in this case.

Because Plaintiff has not attempted to set forth a cognizable claim pursuant to this Court's federal question jurisdiction, I consider only whether the Court has subject matter jurisdiction under 28 U.S.C. § 1332, the statute conferring diversity jurisdiction. For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between

> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

In his Complaint, Plaintiff alleges that he is a resident of the State of New York, that Defendant Copart is a Connecticut Corporation, and that Defendant USA Auto Market, LLC. is an Indiana Corporation. Compl. at ¶¶ 1-3. Thus, with diversity of citizenship established, the sole remaining issue for the Court is whether the amount in controversy exceeds the statutory threshold of $75,000. While it is true that courts view the amount demanded in the complaint as a "good faith representation of the actual amount in controversy," that is a "rebuttable presumption." *Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 (2d Cir. 1994) (citation omitted). Jurisdiction will be found lacking where "from the face of the pleadings it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

To determine the amount in controversy in a claim for money damages, the starting

point is the amount of damages permitted by law under the cause of action claimed. *Lucente v. IBM,* 310 F.3d 243, 261 (2d Cir. 2000). With regard to Plaintiff's breach of contract causes of action, the amount of damages would be limited to Plaintiff's actual damages, as well as any consequential damages. *See Thalle Const. Co., Inc. v. Whiting-Turner Contracting Co., Inc.*, 39 F.3d 412, 418 (2d Cir. 1994) ("speculation will not be indulged and damages will be limited to damages actually proven.") (*quoting Fehlhaber Corp. v. State,* 69 AD2d 362, 370 (3d Dep't 1979)).

According to the Plaintiff, his actual damages were $1,990, including the purchase price for the car, fees and commissions, insurance and other expenses. *Id.* at ¶ 71. Plaintiff seeks to recover amounts additional to his out-of-pocket expenses because he claims that, as a result of his failure to obtain the vehicle, or to obtain a refund of the purchase price, his ability to search for new employment was impacted. In particular, in December of 2013, he was offered an interview in Connecticut for a job with AIG with a proposed salary of $115,000, but because his money was tied up with the Copart dispute, he was unable to attend the interview. *Id.* at ¶¶ 38 & 100. As a result, he seeks $129,000 in lost earnings based on the theory of tortious interference under New York law, as well as an additional $30,000 for emotional damages on a claim of negligent infliction of emotional distress. *Id.* at ¶¶ 100, 115, 122 & 128.

Applying the legal certainty test, Plaintiff has no ability to recover these additional amounts under established New York law. As noted above, Plaintiff's claim for breach of

contract is limited to actual damages, as measured at the time of the breach. In the present case, at issue is a donated car with a value of approximately $1,500.  Any additional fees, insurance, or title expenses, would at most raise the recovery level to $2,000, well below the $75,000 threshold.  While the Court does not doubt that Plaintiff's interaction with Copart and its employees was deeply disconcerting, there simply is no legal "right of recovery for mental distress resulting from the breach of a contract-related duty." *Wehringer v. Standard Sec. Life Ins., Co. of N.Y.*, 57 N.Y. 2d 757, 759 (1982).  Moreover, consequential damages would only be allowed if such damages were foreseeable and within the contemplation of the parties at the time of the contract.  *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006).  Plaintiff's claim of lost wages in excess of $100,000 for his failure to attend an interview, and thus, possibly, obtain a new job, where the interview opportunity did not arise until two months *after* the alleged contract and breach, is a claim that is wholly speculative and certainly was not within the contemplation of the parties to the contract.

Recognizing these difficulties, Plaintiff seeks to recover these additional amounts, not under breach of contract theory, but rather under claims of tortious interference and negligent infliction of emotional distress. Compl. at ¶¶ 100, 115.  The Complaint, however, fails to set forth a plausible claim under either theory. For example, the tort of interference with a prospective contract under New York law would require a showing of (1) knowledge of the business opportunity; (2) intentional interference with that opportunity; (3) through the use of a wrongful means or that the defendant acted with the sole purpose of inflicting harm; (4)

that the business relationship would have been entered into but for the defendant's interference; and (5) resultant damage. *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y. 2d 614 (1996); N.Y. Pattern Jury Instr. - Civil § 3:57. None of the elements of such a claim have been specifically alleged in this Complaint, nor could they be in light of the fact that the interview at issue was not known at the time Defendant Copart allegedly refused to refund Plaintiff's purchase price.

Next, under New York law, the tort of negligent infliction of emotional distress requires: "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F.Supp. 2d 122, 134 (E.D.N.Y. 2010) (citations omitted). The outrageousness standard is "difficult to satisfy" and New York courts tend to focus on the that element because it is "most susceptible to determination as a matter of law." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121-22 (1993) (citations omitted).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted). What is more, recovery for purely emotional harm "must generally be premised upon the breach of a duty . . . which either endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d at 135.  The present Complaint fails to plausibly allege such a claim.

With regard to Plaintiff's allegations under New York's General Business Law, that provision allows a private party to file suit and seek recovery for injuries to consumers caused by unfair or deceptive practices. N.Y. Gen. Bus. § 349(h). However, the statute is focused on consumer oriented conduct and generally does not apply to breach of contract disputes between private parties. *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 24-25 (1995). Even assuming that such a statutory claim can proceed under the facts of this case, the damages of such an action are limited to Plaintiff's actual damages, or fifty dollars, whichever is more. N.Y. Gen. Bus. § 349(h). In addition, while the statute does allow a punitive award, in the form of treble damages, that amount is capped at a maximum of $1,000. *Id.* These figures, even if taken collectively and added to the plausible actual damage claim of Plaintiff, are insufficient to meet the $75,000 requirement.

Ultimately, therefore, Plaintiff must rely upon his request for an unstated amount of punitive damages in connection with his breach of contract/fraud claims[5] to elevate his claims over the statutory threshold. And while Federal courts are clear that they will consider the addition of punitive damages as part of the jurisdictional prerequisite where such damages are permitted under the controlling law of the state, they will nevertheless review

---

[5] New York Courts have "held numerous times that a fraud claim that ar[ises] from the same facts [as an accompanying contract claim], s[eeks] identical damages and d[oes] not allege a breach of any duty collateral to or independent of the parties agreements is subject to dismissal as redundant of the contract claim." *Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 62-63 (1st Dept. 2017). Moreover, recovery in tort is unavailable for purely economic loss. *Bristol-Myers Squibbs Indus. Div. v. Delta Star, Inc.* 206 A.D.2d 177, 180 (4th Dep't 1994).

such punitive damage claim with "heightened scrutiny." *Nwanze v. Time, Inc.,* 125 Fed. Appx. 346, 348-49 (2d Cir. 2005).

Under New York law, to state a claim for punitive damages arising from a breach of contract, the pleadings must show four elements: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *N.Y. Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 316 (1995). To satisfy the first element of this test, a claimant must "identify a tort independent of the contract,"and "where a party is merely seeking to enforce its bargain, a tort claim will not lie." *Id.* at 316. As the Court of Appeals of New York has further noted,

> a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.

*Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) (internal citations omitted).

Even liberally construed, the allegations of the Complaint are not sufficient to reach this threshold. These allegations are highly fact-specific relating to particular commercial transactions and provide no basis for finding that the alleged conduct was aimed at the public generally. Nor does the Complaint set forth allegations of the type of egregious conduct that would support a finding of punitive damages. Nor does it set forth an independent tort. As a result, there is no basis for Plaintiff's punitive damage claim premised upon his breach of

contract allegations.

## II. CONCLUSION

In sum, this case presents a garden variety breach of contract claim involving out-of-pocket damages of approximately $2,000. Despite artful pleading, there is no plausible claim stated in the Complaint that would satisfy the jurisdictional threshold of $75,000. Rather, it is a legal certainty that Plaintiff cannot satisfy the threshold. In light of the above discussion, the undersigned has determined that this Court lacks the subject matter jurisdiction necessary to maintain this action.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that this entire action be *sua sponte* dismissed due to lack of subject matter jurisdiction; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  January 16, 2018
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge